UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK F.,                                         )
                                                 )
            Plaintiff,                           )
                                                 )
      v.                                         )   No. 1:20-cv-00550-SEB-MJD
                                                 )
ANDREW M. SAUL Commissioner of the               )
Social Security Administration,                  )
                                                 )
            Defendant.                           )

**REPORT AND RECOMMENDATION**

Claimant Mark F. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 423(d). Judge Sarah Evans Barker has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 10.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE AND REMAND** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in January 2015, alleging an onset of disability as of May 10, 2014. [Dkt. 8-2 at 12.] Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Gladys Whitfield ("ALJ") on May 4, 2017. *Id.* at 30. The ALJ issued a partially favorable decision on June 22, 2017, finding that Claimant became disabled on November 28, 2015, the date of his 55th birthday, which is when

he entered the "individual of advanced age" category. *Id.* at 12. After the Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner, Claimant appealed to this court the Commissioner's determination that he was not disabled prior to November 2015. On March 6, 2019, the undersigned reversed and remanded the Commissioner's decision, instructing the Commissioner to consider two issues on remand, one relating to Claimant's physical impairments and the other relating to Claimant's moderate deficiencies in concentration, persistence, or pace. *Mark F. v. Berryhill*, 2019 WL 1055098, at *1 (S.D. Ind. Mar. 6, 2019).

The ALJ held a post-remand hearing on November 15, 2019. [Dkt. 8-5 at 111.] On December 13, 2019, the ALJ issued her determination, again finding that Claimant was not disabled prior to November 28, 2015. *Id.* at 58. Claimant appealed directly to this Court pursuant to 20 C.F.R. § 404.984(d), and timely filed his Complaint on February 19, 2020, seeking judicial review of the ALJ's decision. [Dkt. 1.]

**II. Legal Standards**

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments

meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

Because Claimant's case was remanded by this court for further consideration, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(d). In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant did not engage in substantial gainful activity during the relevant time period, between the alleged onset date of May 10, 2014, and November 2015. [Dkt. 8-5 at 61.] At step two, the ALJ found that Claimant had the following severe impairments during the relevant time period: "degenerative disc disease of the lumbar and cervical spine; possible shoulder strain/pain; carpal tunnel syndrome; depression; and panic disorder." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except: lift and/or carry twenty pounds occasionally and ten pound[s] frequently; stand and/or walk for about six hours; sit for up to six hours; never climb ladders, ropes, or scaffolds, but occasionally perform other postural maneuvers; able to understand, remember, [carry out] simple tasks with limited demand, pressure, and complexity, and familiar tasks with limited work hassle and pace restrictions; can attend to tasks for sufficient periods of time to complete tasks; can handle stresses of a routine work setting; can relate on at least a superficial basis, meaning interactions are of no consequence to the job or are not a required activity, and no more than occasional interaction, with coworkers, supervisors, and the general public; perform simple, routine, repetitive tasks, that is, short cycle work, performing a few routine tasks, over and over again, according to set procedures or sequence; no fast paced production requirements; no tandem tasks or team work; allowed to alternate positions for one to two minutes every thirty minutes; and does not require greater than 45 degree forward flexion of the lumbar spine.

*Id* at 63.

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period. *Id*. at 70. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that during the relevant time period Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 71. Accordingly, the ALJ concluded Claimant was not disabled during the relevant time period. *Id.* at 72.

## IV. Discussion

Claimant's single argument is that the ALJ failed to properly account for Claimant's moderate limitations in concentration, persistence, or pace and in interacting with others in her RFC determination and her hypothetical questions to the VE. The Magistrate Judge's prior order remanding this case to the Commissioner addressed this issue, and it is an issue that has been addressed repeatedly by the Seventh Circuit. *See, e.g.*, *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Varga*, 794 F.3d at 814; *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). Those cases have made it clear that when, as here, an ALJ finds moderate limitations in one of the so-called "B criteria" at step three, *see* 20 C.F.R. § 404.1520a, those limitations must be accounted for in the RFC determination and the hypothetical questions posed to a VE expert who is not otherwise familiar with Claimant's medical records.[1] *See, e.g.*, *DeCamp*, 916 F.3d at 675 ("The ALJ must explicitly account for all a claimant's limitations in her hypothetical, including limitations in concentration, persistence, or pace, unless the vocational expert has independently reviewed the medical record.") (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Lanigan v. Berryhill*, 865 F.3d 558, 563, 565 (7th Cir. 2017)). The cases also make clear that accounting for moderate limitations in concentration, persistence, or pace by including generic restrictions such as "simple, routine tasks" or "unskilled work" in the RFC, without further explanation, is not sufficient. *See, e.g.*, *DeCamp*, 916 F.3d at 676 (finding "no basis to suggest" that restriction to "unskilled work" with no "fast-paced production

---

[1] Here, the VE testified that he had not "assumed any facts about the workers other than those provided [to him] in the hypothetical questions." [Dkt. 8-5 at 126.]

line or tandem tasks . . . may serve as a proxy for including a moderate limitation on concentration, persistence, and pace"); *Yurt,* 758 F.3d at 858-59 ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."). Claimant argues that the ALJ's RFC and hypothetical questions were similarly deficient in this case.

In addition to physical restrictions, the ALJ's string of hypothetical questions to the VE included the following:

> the individual can understand, remember and carry out simple tasks. The individual can attend to tasks for sufficient periods of time to complete tasks. The individual would need tasks with limited demand, pressure and complexity. And familiar tasks with limited work hassle, and pace restrictions. The individual can handle the stresses of a routine, repetitive work setting. . . . The individual can relate on at least a superficial basis with co-workers and supervisors and the general public. . . . [T]he simple, routine, repetitive tasks would be short cycle work were [sic] there are a few routine tasks that are performed over and over again, according to set procedures, or sequence. . . . [T]here should be no fast paced production requirements. . . . [T]he interactions [with others] would be occasional, no more than occasional. . . . [T]here would be no tandem tasks, and no teamwork. . . . .

[Dkt. 8-5 at 117-20, 121.] The ALJ then had the following exchange with the VE:

> ALJ: Do you have an opinion regarding how more than occasional interaction versus the limitation that I have given, do you have an opinion regarding how interactions affect the performance of the job, or the demands of the position?
>
> VE: Interactions with others, if they limited the ability to attend to the details, to the tasks that were being performed would be problematic.
>
> ALJ: And problematic in what way?
>
> VE: If it slowed down the pace, if one was unable to maintain focus and concentration based on interaction with others at a greater than 10 percent, leaving them off task, or more than six minutes per hour average, it would eliminate work.

>ALJ:   Do you have an opinion regarding whether or not occasional, or less than occasional—let's say up to occasional interaction with the co-workers and supervisors, does that in some way in your opinion help an individual with concentration, persistence and pace?
>
>VE:    Yes, in my opinion, it does.
>
>ALJ:   And how so?
>
>VE:    If one is not interacting with others, then one is concentrating on the tasks to be performed, eliminating off task issues.
>
>ALJ:   So are the job demands lessened with occasional, or up to occasional interaction versus more than occasional?
>
>VE:    There would be less than occasional interaction, occasional interaction at most in these type of unskilled physical demand jobs, production type jobs.
>
>ALJ:   So—and you may have explained this, but how does the occasional or less interaction, how does that—in what way does that allow an individual to be able to concentrate and persist—
>
>VE:    If one is not—
>
>ALJ:   —and paced—
>
>VE:    Yes, if one is not concentrating on the tasks, if one is talking with co-workers instead of performing the work functions, it would be problematic.

*Id.* at 120-21.

The RFC set forth in the ALJ's decision is consistent with the hypothetical questions and supported by the VE's testimony. Both are consistent with the opinion of the state agency psychological consultant, which the ALJ assigned great weight. Indeed, the ALJ's treatment of Claimant's moderate limitations in concentration, persistence, or pace and in interacting with others is fully supported by the state agency consultant opinion on which the ALJ relied. As the ALJ correctly explained:

>The State agency psychological consultant opined the claimant is "moderately limited" in the ability to complete a normal workday and workweek without

7

>   interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (EX 3A at 9). However, the State agency psychological consultant went on to explain the claimant retains the ability to: understand, remember, and carryout simple tasks, tasks with limited demand, pressure, and complexity, and familiar tasks with limited work hassle and pace restrictions; relate on at least a superficial basis; attend to task for sufficient periods of time to complete simple tasks; manage light stresses involved with work related tasks; and manage unskilled tasks (EX 3A at 9). Thus, although the claimant's ability to handle stress and pressure in the workplace would be reduced, the State agency psychological consultant noted the claimant retains adequate functioning to handle the stress of a routine repetitive work setting (EX 3A). Their opinions are given great weight because they are an acceptable medical source that reviewed the evidence from the relevant time period and their opinion is well supported by the record. While the undersigned considered the State agency psychological consultant's opinion the claimant has a "moderately" limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms as well as a "moderate" limitation in the "paragraph B" criteria for concentration, persistence or pace (EX 7A), these ratings are based upon the record as a whole and in all situations that the claimant might encounter. Yet, when limited to performing simple, routine, repetitive tasks, as well as no more than occasional interaction with others, the claimant's ability to function in these areas is higher. Within the parameters of the above residual functional capacity, the claimant is able to sustain the attention, concentration, and persistence needed to perform work on a regular and continuing basis.

[Dkt. 8-5 at 69-70.] In other words, the ALJ fully examined the narrative explanation given by the consultant regarding Claimant's moderate limitations in concentration, persistence, or pace and crafted limitations designed to account for the Claimant's specific limitations.

Were the Magistrate Judge deciding this case in a vacuum, he might well find that the ALJ's treatment of Claimant's moderate limitations in concentration, persistence, or pace was supported by substantial evidence and that the ALJ properly accounted for those limitations in her RFC and in the hypothetical questions posed to the VE. However, as noted above, the Seventh Circuit has issued numerous opinions addressing the concentration, persistence, or pace issue, including two reversing this Magistrate Judge's own decisions, and the Magistrate Judge simply cannot in good faith distinguish those cases from this one.

For example, in *Winsted v. Berryhill*, 2:17-0137-MJD-WTL (S.D. Ind.), the ALJ (and the state agency psychologists) found that the claimant had moderate limitations in concentration, persistence, or pace, and the ALJ accounted for those limitations by limiting the claimant to "simple, routine, repetitive tasks with few workplace changes, no team work, and no interaction with the public." The ALJ's limitations were consistent with the narrative portion of the state agency psychologists' assessment, which stated that claimant could "understand, remember, and carry-out unskilled tasks without special considerations in many work environments. The claimant can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task for sufficient periods of time to complete tasks. The claimant can manage the stress involved with unskilled work." *Id.* at Dkt. No. 31. The undersigned found that the ALJ's RFC with regard to claimant's limitations in concentration, persistence, or pace was supported by substantial evidence because the ALJ reasonably relied on the explanation given in the narrative portion of the assessment form. The Seventh Circuit, however, disagreed, noting that:

> [T]he first hypothetical the ALJ posed to the VE did not direct the expert to consider problems with concentration, persistence, and pace, which is the hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the *absence* of the phrase "moderate difficulties with concentration, persistence, and pace" and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question. *See O'Connor-Spinner*, 627 F.3d at 619. The ALJ may have thought, as the agency proposes, he was addressing Winsted's concentration difficulties by including limitations that would minimize social interaction. But that restriction could just have likely been meant to account for Winsted's moderate difficulty with social functioning—the ALJ acknowledged Winsted experiences anxiety, panic attacks, and irritability when he is *around people*. Nothing in the hypothetical question and RFC, however, accounted for the ALJ's discussion of how Winsted's low GAF scores reflect serious mental-health symptoms or his mention that Winsted often "appeared tense, anxious, and/or restless" *without interacting with other people*. Additionally, where a claimant's limitations are stress-related, as Winsted's appear to be, the hypothetical question should account for the level of stress a claimant

9

>can handle. *See Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); *Johansen v. Barnhart*, 314 F.3d 283, 285, 288–89 (7th Cir. 2002). But there was no restriction related to stress in the RFC or hypothetical question.

*Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). Thus, even though there was evidence of record that the claimant's moderate limitations in concentration, persistence, or pace did not prevent him from managing work-related stress if he was limited to unskilled work, the Seventh Circuit held that such a limitation was **not** sufficient; the ALJ was required to specifically account for the amount of stress the claimant could handle.

>Similarly, in *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019), the ALJ

>>asked the expert to consider a hypothetical claimant with Paul's vocational background and education who had the mental capacity to perform "simple, routine, repetitive tasks" that do not require directing others, abstract thought, or planning; and would involve only "simple, work related decisions, and routine workplace changes." The ALJ added that the claimant would require work that could be performed at a "flexible pace," meaning that it is "free of production rate pace where there are no tandem tasks or teamwork or one production step that's dependent upon the prior step." And the job must entail only occasional interaction with the public, coworkers, or supervisors.

The undersigned found that in crafting these restrictions the ALJ reasonably relied on the narrative explanation of the claimant's mental limitations contained on the forms completed by the state agency psychologists. *Paul v. Berryhill*, 2018 WL 1477532 (S.D. Ind. March 26, 2018).

The Seventh Circuit, however, held that

>Paul's ability to learn routine, unskilled tasks does not address whether she can also maintain the concentration and focus needed to sustain her performance of that task for an extended period. See *Moreno*, 882 F.3d at 730. The RFC and the hypothetical question here exclude complex tasks that require higher-level thinking but do not acknowledge Paul's moderate limitations with following a schedule and sticking to a given task. And the ALJ's reference to "flexible pace" is insufficient to account for Paul's difficulties maintaining focus and performing activities within a schedule, because the reference excludes only production-pace employment. See *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015). Without more, the VE cannot determine whether someone with Paul's limitations could maintain the proposed pace or what the proposed pace even is. See *id.*

*Paul*, 760 F. App'x at 465; *see also DeCamp*, 916 F.3d at 676 ("[E]ven if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms.") (citing *Yurt*, 758 F.3d at 859 (although "a narrative explanation translated the limitations identified by doctors in the check-box sections of the forms," ALJ still erred by "not adequately account for the limitations identified by the doctor in the check-box section of the forms")).

In this case, as Claimant points out, while the ALJ's RFC and hypothetical refers to "pace restrictions" and "no fast-paced production requirements," the ALJ failed to specify the pace at which Claimant is able to work. In addition to *Paul*, quoted above, the Seventh Circuit has found this problematic in other cases. *See Varga*, 794 F.3d at 815 ("It is also problematic that the ALJ failed to define 'fast paced production.' Without such a definition, it would have been impossible for the VE to assess whether a person with Varga's limitations could maintain the pace proposed.");[2] *DeCamp*, 915 F.3d at 675 (rejecting "no fast-paced production line or tandem tasks" as a "proxy for including a moderate limitation on concentration, persistence, and pace").[3]

---

[2] The Court recognizes that the Seventh Circuit stated in *Martin*, 950 F.3d at 374, that its "holding in *Varga* did not root itself in vagueness" and that "there is only so much specificity possible in crafting an RFC." But the fact remains that the ALJ's hypothetical questions must be specific enough to ensure that the VE's testimony accurately correlates to the ALJ's determination of the claimant's capabilities.

[3] In his response brief, the Commissioner, citing *Jozefyk*, 923 F.3d at 492, argues that "[f]atal to his case is [Claimant's] failure to point to any record evidence showing that he had more mental limitations that [sic] the ALJ found." [Dkt. 12 at 8.] However, in *Jozkefyk*, the Seventh Circuit distinguished *Varga* and *Yurt* because "[a]lthough Jozefyk states that he suffers from psychological limitations while alone, according to the medical evidence, his impairments surface only when he is with other people or in a crowd," and the restrictions imposed by the ALJ adequately accounted for that by limiting Jozefyk to "routine tasks and limited interactions

Similarly problematic is the ALJ's use of the term "limited work hassle" in the hypothetical and RFC, as that term has no understood meaning, and therefore it is impossible to know whether the VE's interpretation of the term is the same as the ALJ's, or whether either of their interpretations is the same as the state agency psychologist who used it in her narrative. Based on the binding precedent cited above, the Magistrate Judge must conclude that these problems with the ALJ's decision, which is otherwise quite thorough and well-reasoned, require reversal.

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 18 MAR 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

with others." The court further found, in dicta, that "even if the ALJ's RFC assessment were flawed, any error was harmless" because there was no evidence in the record that would support a more limited RFC. *Jozefyk*, 923 F.3d at 498. As Claimant points out in his reply brief, the record in this case does contain evidence regarding Claimant's psychological impairments, *see* [Dkt. 13 at 10], which distinguishes this case from *Jozefyk*. *See Crump*, 932 F.3d at 570 (distinguishing *Jozefyk* in part because "[t]he medical evidence plainly shows, and the ALJ recognized, that Crump suffers from [concentration, persistence, or pace] limitations").

Distribution:

Service will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system.